**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

---

**MICHAEL HESTER,**

              **Plaintiff,**

**v.**                                                    **No. 1:24-cv-1034-STA-jay**

**CHESTER COUNTY, TENNESSEE,**
**BLAIR WEAVER, MARK GRIFFIN,**
**And BRIAN STOUT,**

              **Defendants.**

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

---

Plaintiff Michael Hester filed this action against Chester County, Tennessee, and Sheriff Blair Weaver, Chief Deputy Mark Griffin, and Jail Administrator Brian Stout in their individual capacities. Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Fourth and Fourteenth Amendment rights. Plaintiff has also brought supplemental state law claims.[1] Defendants have filed a motion to dismiss. (ECF No. 21.) Plaintiff has filed a response to the motion (ECF No. 27), and Defendants have filed a reply to the response. (ECF No. 28.) For the reasons set forth below, the motion to dismiss is **GRANTED**.

<u>Standard of Review</u>

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed

---

[1] In his response, Plaintiff concedes that he does not have a cause of action under the Tennessee State Constitution. (Resp. p. 17.)

factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).   Under *Twombly* and *Iqbal*, Rule 8(a)'s liberal "notice pleading" standard requires a complaint to contain more than a recitation of bare legal conclusions or the elements of a cause of action. Instead, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

<u>Background</u>

The complaint alleges as follows. In 2016, Plaintiff pled guilty to state court charges in the Circuit Court for Madison County and received a ten-year sentence. He was later released on probation. Subsequently, Plaintiff was arrested on charges arising in Chester County which resulted in the revocation of his Madison County probation. On November 8, 2019, Plaintiff received a sentence of eleven months and twenty-nine days for three misdemeanors and a sentence of six years for two felonies based on the Chester County charges. These five convictions were to be served concurrently to each other but consecutively to Plaintiff's Madison County charges. After being sentenced, Plaintiff was remanded to the Tennessee Department of Correction ("TDOC") and housed at the Morgan County Correctional Complex ("MCCX").

On January 10, 2023, the Tennessee Board of Parole granted Plaintiff parole. His parole was scheduled to become effective on February 15, 2023, at which time he would be released from TDOC custody. Sometime prior to Plaintiff's release date, Defendant Brian Stout issued a detainer warrant against Plaintiff.  Plaintiff alleges that Defendant Stout did so even though he "knew, or should have known, that Plaintiff's sentences were to be served concurrently and that the detainer was invalid." The detainer warrant prevented Plaintiff from being released as planned on February 15, 2023.

According to the complaint, Plaintiff and his family tried to remedy Defendants' alleged wrongful actions but to no avail. Defendant Stout and/or other members of the Sheriff's Department allegedly warned Plaintiff not to contact a lawyer to help him obtain the release. Subsequently, Stout allegedly admitted that he, Sheriff Weaver, and Griffin had been having disagreements as to whether the detainer was valid, but neither Griffin or Weaver made any attempts to intervene, clarify, or resolve the matter.

A few months later, after Plaintiff's counsel intervened, a Chester County official released the detainer warrant. Despite Chester County Sheriff's Department's removal of the detainer warrant on May 10, 2023, Plaintiff remained incarcerated at MCCX for an additional forty-three days. He was not released from MCCX until June 22, 2023.  After being released, Plaintiff did not obtain full freedom. Instead, he resides in a residential reentry center in Knoxville, Tennessee. Plaintiff will become eligible for release from the reentry center on or around September 24, 2024. According to Plaintiff, Defendants acted with deliberate indifference and in reckless disregard to his constitutional rights, and their actions resulted in his illegal imprisonment from February 15, 2023, to June 22, 2023.

<u>Analysis</u>

<u>Section 1983</u>

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)).

In their motion, Defendants contend that Plaintiff did not possess a constitutional right to parole, and, therefore, delaying his parole date by placing an "invalid" detainer warrant on him cannot constitute a constitutional violation. In support of their argument, Defendants cite *Seagroves v. Tenn. Bd. of Probation & Parole*, 86 F. App'x 45 (6th Cir. 2003), and *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011), for the proposition that there is no constitutional right to parole.

> Seagroves does not have an inherent constitutionally created right to parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L.Ed.2d 668 (1979). **Moreover, the Tennessee parole scheme does not create an expectation that parole will be granted which is sufficient to trigger a constitutionally protected liberty interest.** *See* Tenn. Code Ann. §§ 40-28-117(a) and 40-35-503(b) (1999); *Wright v. Trammell*, 810 F.2d 589, 590–91 (6th Cir.1987); *Hickman v. Traughber*, No. 99–6639, 2000 WL 1562844, at *1 (6th Cir. Oct.12, 2000) (unpublished).

*Seagroves*, 86 F. App'x at 48 (emphasis added).

4

Defendants point out that, in order for a prisoner to enjoy a "right" to parole, he must "have a legitimate claim of entitlement to it." *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). That is, a "mere unilateral hope or expectation of release on parole" is not enough to constitute a protected liberty interest or to create a "legitimate claim of entitlement to it." *Id.* (quoting *Greenholtz*, 442 U.S. at 7). Instead, only state law can create a "legitimate claim of entitlement" to parole, which Tennessee has not done. *See Seagroves*, 86 F. App'x at 48 (citing Tenn. Code Ann. §§ 40-28-117(a) and 40-35-503(b)).

Defendants correctly recognize that, when an inmate is granted parole and is actually released from incarceration, he enjoys a constitutionally protected liberty interest in parole. *See Preston v. Piggman*, 496 F.2d 270, 273 (6th Cir. 1974) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 4 (1973)); *Adams v. Genovese*, 2018 WL 2560397, at *6 (M.D. Tenn. June 4, 2018) ("[R]evocation of parole implicates a cognizable liberty interest, whereas denial of parole does not.") (citing *Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707 (Tenn. 2017)). As a consequence, while restrictions may be placed on the liberty interest implicated in parole revocation, parole may not be terminated without the rudiments of procedural due process. *Morrissey v. Brewer*, 408 U.S. 471 (1972). Contrarily, when parole is rescinded prior to the inmate's release, the inmate does not enjoy a protected liberty interest in parole. *Jago v. Van Curen*, 454 U.S. 14 (1981).[2] *See also Belle v. Booker,* 2009 WL 1313306, at *3 (E.D. Mich. May 11, 2009)

---

[2] *Jago* concerned an inmate who was granted a parole date only to have it revoked before his release. The Supreme Court found that the inmate had no protected liberty interest in his parole date and, therefore, no due process protections were required prior to rescission. Neither the "grievous loss" suffered by the inmate upon the revocation of his parole date nor the "mutually explicit understanding" that he was to be paroled was sufficient to establish a liberty interest. *Id.* at 17.

(stating that a parolee's liberty interest only "comes into existence once the inmate has actually been released on parole.").

Defendants also rely on *Chinners v. Graves*, 2021 WL 5449052 (M.D. Tenn. Nov. 22, 2021), which they contend closely resembles the facts and issues in this case. In that case, an inmate was approved for parole, and his release date was scheduled for August 16, 2021. While completing his release papers, one of the officers received a phone call informing her that the inmate plaintiff was subject to a detainer in South Carolina. *Id.* at *2. Based on this information, the inmate was not released as scheduled, although, as it turned out, the detainer included erroneous information from the National Crime Information Center. *Id.*

In screening the *pro se* complaint, the court first determined that "the gravamen" of the complaint was the inmate plaintiff's "assertion of harms allegedly suffered due to administrative negligence and mistake related to the NCIC database" and the inmate plaintiff did not "invoke any constitutional right to, or liberty interest in, release on parole, and rightly so, as he has no such right or liberty interest … [b]ecause Tennessee law does not provide any substantive liberty interest in parole." *Id.* at *4. The court made clear that the inmate plaintiff could not challenge the procedures surrounding his parole determinations under the Due Process Clause.  "An inmate who has been notified of a decision to release him on parole — and even been allowed to take affirmative steps toward release — may nevertheless have his parole rescinded and release denied, without any right to further hearing." *Id.* (citing *Jago*, 454 U.S. 14).

In this case, Plaintiff agrees that he did not have a constitutional right to parole since Tennessee has not created a specific entitlement to such, but he frames his argument as having a constitutional right to be free from unlawful imprisonment.  Plaintiff argues that, once parole is granted, even if the prisoner has not yet been released, he has a constitutional right not to be

incarcerated beyond the end of his term of incarceration. In support of his argument, he cites *Vitek v. Jones*, 445 U.S. 480, 488-90, (1980) which held that once a "State grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed." Plaintiff distinguishes *Chinners v. Graves* by pointing out the *Chinners* Court observed that no bad action on the part of the defendant in terms of the release and the detainer had been alleged. Instead, the officials "worked to get to the bottom of the discrepancy between the NCIC report and the report of officials in South Carolina" and the officials "were responsive if not sympathetic to his requests for help." *Chinners*, 2021 WL 5449052, at *3.

Here, Plaintiff has alleged that Defendants "falsely asserted that he had not completed his sentence, falsely asserted that he was to serve an additional 11/29 at Chester County Jail and knew or should have known that their assertions were directly contradictory to the Chester County Circuit Court's order." (Resp. pp. 9-10.) Because of these actions, he was detained more than four months past his release date. Plaintiff argues that this distinction makes the holding in *Chinners* inapposite to his own case.

While Plaintiff is correct that *Chinners* is not fully on point with his allegations, he has ignored that court's acknowledgement that, even if the inmate plaintiff had alleged wrongdoing against the defendants, that claim would not have been successful because he had no liberty interest in being released on parole.  In the present case, Plaintiff's sentence had not expired during the time he remained incarcerated after his scheduled parole release date, and he was still in custody during the relevant time period because parole does not free a convict.  Instead, an inmate who has been released on parole is considered to be "in custody" and serving his lawful sentence. *United*

*States v. Williams*, 15 F.3d 1356, 1359 (6th Cir. 1994); *Doe v. Lee*, 2022 WL 17650484, at *21 (M.D. Tenn. Dec. 13, 2022) (explaining that a parolee is, as a formal matter, still technically in state custody as part of his sentence.)

The Court agrees with Defendants that Plaintiff's reliance on *Shorts v. Bartholomew*, 255 F. App'x 46, 51-52 (6th Cir. 2007), to establish that prisoners are entitled to release upon expiration of their sentence is misplaced. Although this is a correct proposition of law, in *Shorts*, the plaintiff was sentenced to one year of split confinement with a predetermined release date but remained incarcerated nearly one year beyond the expiration of his sentence. *Id.* at 48. The plaintiff's actual sentence expired, triggering his right to be released. Here, Plaintiff's sentence did not expire on February 15, 2023. Because he was not released on parole until June 22, 2023, he suffered no constitutional deprivation by remaining incarcerated from February 15, 2023, until June 22, 2023. Accordingly, Plaintiff's § 1983 claim against Defendant Officers fails.

However, even if Plaintiff did suffer a constitutional deprivation, Defendant Officers are entitled to qualified immunity. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies unless "a plaintiff is able to establish (1) the facts show a violation of a constitutional right, and (2), the right at issue was 'clearly established when the event occurred such that a reasonable officer would have known that his conduct violated' the plaintiff's constitutional right." *Foster v. Patrick*, 806 F.3d 883, 886 (6th Cir. 2015) (quoting *Martin v. City of Broadview Heights*, 721 F.3d 951, 957) (internal citation and quotation marks omitted)).

To determine whether qualified immunity applies, a court must decide (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The court need not answer the questions in any particular order, but qualified immunity applies unless the answer to both questions is "yes." *Id.* at 231-32. Once qualified immunity is raised, the plaintiff bears the burden to prove that the defendant is not entitled to it. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

Here, Defendants contend that the facts do not support a showing that they violated Plaintiff's constitutional rights because he possessed no right to parole; thus, they are entitled to qualified immunity under the first prong of the inquiry. They also argue that they are entitled to qualified immunity under the second prong because there is no caselaw that would have placed any of the individual defendants on notice that delaying Plaintiff's parole release date would violate his constitutional rights.

In response, Plaintiff continues to argue that he had a liberty interest in being released at the end of his term of imprisonment. He further argues that this right was clearly established at the time that his rights were allegedly violated and that a reasonable officer in the position of Defendants would have understand that placing a detainer on him would have violated that right. Again, as explained above, Plaintiff is correct that he had a liberty interest in being released at the end of his term of imprisonment, but he ignores the caselaw holding that an inmate who has received a parole date but has not yet been released is considered to be "in custody" and serving his lawful sentence. *See*, *e.g.*, *Williams*, 15 F.3d at 1359. And, as noted by Defendants, Plaintiff

has pointed to no caselaw that shows that a Tennessee inmate enjoys a constitutional right to parole prior to his actual release from incarceration.

Thus, even if Plaintiff had plausibly pled that his constitutional rights were violated because Defendants delayed his parole release date by issuing a detainer, there is no caselaw that would have placed Defendants on notice that issuing such a detainer would violate Plaintiff's constitutional rights. Accordingly, Defendant Officers are entitled to qualified immunity on Plaintiff's § 1983 claim, and the portion of the motion seeking the officers' dismissal is granted.

As for Defendant Chester County, Defendant County has moved to dismiss the claims against it on the ground that the complaint fails to adequately plead that a specific policy or custom of Defendant was the moving force behind the alleged constitutional deprivation as required by *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Instead, according to Defendant, Plaintiff has pled generally and insufficiently that Defendant is liable for unspecified policies that led to the alleged constitutional deprivation.

*Monell* established that, generally, local governments such as Defendant County are not considered to be "persons" under § 1983 and are not subject to suit. *Id.* at 691. However, when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [complained of] injury [,]" municipalities and other local governments are considered a "person" for purposes of § 1983. *Id.* at 694; *see also Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*). "Under § 1983, local governments are responsible only for their own illegal acts" and may not be held vicariously liable for the actions of their employees. *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). That is, § 1983 liability does not attach to a municipality based on the actions of its employee tortfeasors

under the doctrine of *respondeat superior*; instead, such liability may only be imposed on the basis of the municipality's own custom or policy. *Monell*, 436 U.S. at 691.

Accordingly, plaintiffs who seek to impose liability on local governments under § 1983 must prove that an action pursuant to an official policy or custom caused their injury. *Id.* "[T]he official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body," *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694), and that body may be held liable only for constitutional violations resulting from its official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 n. 6 (1986) (citations omitted). Official municipal policy includes the decisions of a government's lawmakers or the acts of its policymaking officials. *Id.* at 480 – 481 (1986). A municipality's policies are "decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality," *Bryan Cnty.*, 520 U.S. at 403-04, while a "custom" is a practice that, while not formally approved, "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. A custom can be one of action or inaction and need not be formally approved by the entity. *City of Canton v. Harris*, 489 U.S. 378, 404 (1989).

Absent proof it resulted from an unconstitutional policy or custom, a county is not liable for a single incident resulting in a constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985). Furthermore, a county is not liable unless there is an "affirmative link between the policy and the particular constitutional violation alleged" or "causal connection." *Id.* A plaintiff must "identify the policy, connect the policy to the municipality itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). A plaintiff's "conclusory allegations that the defendants had an

unlawful policy, unaccompanied by supporting factual allegations, 'are not entitled to the assumption of truth,' and do not state a plausible claim for relief." *Wright v. Louisville Metro Gov't*, 2022 WL 178591, at *4 (W.D. Ky. Jan. 19, 2022) (citations omitted). Here, for the most part, Plaintiff generally alleges that "[t]he misconduct described above was caused by the policies, practices, and customs of Defendants, resulting in their employees and agents to over-detain persons who are subject to release." (*Id.* at para. 68.)

Plaintiff has pointed to no written policy maintained by Defendant County concerning detainers, and neither has he shown, or even specifically described, an unwritten custom. To show a custom, a plaintiff must prove "a clear and persistent pattern" of unconstitutional conduct and cannot merely rely on the facts of his own case. Instead, he must go beyond the facts of his case to show several separate incidents of the alleged rights violation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 434 (6th Cir. 2005). However, even offering examples of multiple discrete instances may not be enough to reasonably draw such a conclusion. *Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) (concluding that three instances of misconduct is not enough to establish a "custom"). Instead, a "custom" exists only if the pattern is "so permanent and well settled as to constitute a custom or usage with the force of law." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010); *Brown*, 520 U.S. at 404 (explaining that "an act performed pursuant to a 'custom'" may trigger municipal liability if the practice "is so widespread as to have the force of law").

Plaintiff has not met the pleading standard of *Iqbal* and *Twombly* regarding allegations of a custom because he has failed to describe any custom that Defendant County has adopted that led to the deprivation of his constitutional rights. The complaint contains no allegations concerning any prior incidents involving Defendant County or its employees and the issuance of detainers that

would lead the Court to conclude that Plaintiff has stated a plausible *Monell* claim against Defendant County based upon allegations of an unconstitutional written policy or a custom concerning the issuance of detainers.

The only specific allegation regarding a policy or custom held by Defendant County that led to Plaintiff's incarceration beyond his parole date is the allegation that "Defendants declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents." (Cmplt. at para. 71.) Looking at this theory, the Court finds that Plaintiff has not plausibly alleged such a claim. "[A] local government's decision not to train [or supervise] certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61.  To succeed on a failure to train or supervise claim, a plaintiff must show that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

> In addition, a plaintiff asserting constitutional deprivations arising from a failure to train or supervise must, more specifically, allege facts regarding "prior instances of unconstitutional conduct demonstrating that the [government entity] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). A motion to dismiss is properly granted on a failure to train and supervise claim where a plaintiff fails to allege "*any* facts that there were prior instances of similar misconduct so as to show that [the defendant] was on notice that its training and supervision with respect to the use of force and medical treatment was deficient." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (emphasis in original); *see also Austin v. City of Cincinnati*, No. 1:15-CV-608, 2015 WL 5680382, at *3 (S.D. Ohio Sept. 25, 2015) (finding dismissal warranted because "[t]he complaint fails to cite a single prior instance or statistic in support of this claim"), report and recommendation adopted, No. 1:15-CV-608, 2016 WL 1718264 (S.D. Ohio Apr. 28, 2016).

13

*McCoy v. Carlson*, 2020 WL 419439, at *4 (S.D. Ohio Jan. 27, 2020), report and recommendation adopted, 2020 WL 635781 (S.D. Ohio Feb. 11, 2020).

Plaintiff has alleged no facts showing a history or pattern of unconstitutional decision-making by the policymakers for Defendant County or even "a single prior instance or statistic in support of this claim." Additionally, he has provided no facts concerning what the County's training policies were, why they were inadequate, how the County was deliberately indifferent, or how any alleged failures in training or supervision related to his injuries. "Plaintiff's use of phrases such as 'failure to train,' [and] 'failure to supervise' ... is meaningless without any factual allegations." *Mitchell v. City of Hamilton*, 2012 WL 701173, at *5 (S.D. Ohio Mar. 1, 2012) (quoting *Johnson v. Gannon*, 2010 WL 1658616, at *4 (M.D. Tenn. Apr. 23, 2010).

> To plead a § 1983 claim based on a failure to train sufficient to withstand a Rule 12(b)(6) motion after *Iqbal* and *Twombly*, the plaintiff must plead more facts than those that constitute the alleged underlying constitutional violation. *See Hill v. City of Cincinnati*, No. 1:09–cv–800, 2010 WL 3257725, at *5 (S.D. Ohio Jul. 16, 2010) (dismissing claim against the city where the plaintiff pleaded "only facts [that] ... relate to her individual circumstances"), report and recommendation adopted by, 2010 WL 3257727 (S.D. Ohio Aug. 17, 2010); *Scrap Yard, LLC v. City of Cleveland*, No. 1:10 CV 2465, 2011 WL 3900571, at *4 (N.D. Ohio Sep. 6, 2011) (dismissing claims that were "founded on 'a single set of allegedly wrongful acts'" rather than on "violations [that] occurred pursuant to the City of Cleveland's policy or custom."). The plaintiff should plead facts regarding the nature of the training and supervision provided to the officers. The plaintiff also should plead facts demonstrating deliberate indifference, such as facts that policymakers "were on notice as to constitutional violations by officers" or "that a pattern of similar constitutional violations [has] occurred." *Mason v. City of Warren Police Dep't*, No. 10–cv–14182, 2011 WL 5025841, at *12 (E.D. Mich. Oct. 21, 2011). Here, Mitchell has pleaded facts concerning only a single set of wrongful acts towards him, not a policy or custom of inadequate training or supervision.

*Mitchell*, 2012 WL 701173, at *5.

Because Plaintiff has "pleaded facts concerning only a single set of wrongful acts towards him, not a policy or custom of inadequate training or supervision," *id.*, he cannot maintain a § 1983 against Defendant County on this theory.

14

In addition to the failure to train/supervise theory, Plaintiff argues, in his response to Defendants' motion to dismiss, that Defendant Sheriff Weaver had policymaking authority for the County concerning issuing detainer warrants and that Defendants Chief Deputy Griffin and Jail Administrator Stout had imputed policymaking discretion to file detainer warrants. Plaintiff reasons that, since Defendant Officers were imputed policymakers for the County, their decision to file a detainer warrant should be deemed a decision of the County.  Alternatively, Plaintiff contends that Defendant Sheriff ratified the acts of Griffin and Stout because they discussed whether the detainer warrant in this case was valid, but Defendant Sheriff allegedly made no attempt to intervene, clarify, or resolve the matter. Further, Defendants allegedly warned Plaintiff not to contact a lawyer to help obtain a release leading to an inference that Defendants knew that a lawyer would be able to obtain Plaintiff's release and Defendant Sheriff did not want his actions to be overturned.  In essence, Plaintiff is arguing that a single act or decision by an official policymaker can be enough to prove that a policy existed and/or that a single-act of ratification by a policymaker is sufficient to impose *Monell* liability.[3]

Ratification occurs when an individual with policymaking authority issues a final decision affirming a subordinate's decision and, thereby, adopts it as municipal policy. *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An official with final decision-making authority ratifies a subordinate's action if the decision maker provides "affirmative approval of a particular decision made by [the] subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993).  To establish liability under a ratification theory, a plaintiff must show that the ratification was the

---

[3] The "single act theory" is applicable only to *Monell* claims based on unconstitutional policies - not to *Monell* claims based on unconstitutional customs. *See Pembaur*, 475 U.S. at 480-81 (discussing that a single act may be enough to prove liability pursuant to a policy but noting that a "custom or usage" argument must still prove an actual local custom).

moving force behind the alleged constitutional violation. *Peabody v. Perry Twp., Ohio*, 2013 WL 1327026 at *12 (S.D. Ohio Mar. 29, 2013) (citing *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991)). A municipality cannot be held liable for the ratification of alleged unconstitutional conduct based on a "single, isolated decision" because such a "decision can hardly constitute the 'moving force' behind the alleged constitutional deprivation." *Id.* at 884–85. Thus, "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). Otherwise, the municipality "would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from *respondeat superior* liability." *Id.* (citations omitted). "A ratification theory of liability is not so broad as to impute liability to a municipality if a policymaker defends his subordinates and those subordinates are later found to have broken the law." *Domingo v. Kowalski*, 2014 WL 4302553, at *17 (N.D. Ohio Aug. 29, 2014), aff'd, 810 F.3d 403 (6th Cir. 2016) (citations omitted).

Instead, for ratification by a policymaker's final approval to be the moving force behind a constitutional violation, the plaintiff must show that there was a history or pattern of unconstitutional decision-making by the policymakers. *Williams*, 936 F.2d at 884-85 (noting that "[t]here was no history that the policy had been repeatedly or even sporadically misapplied by school officials in the past"); *see also Baker v. Union Twp., Ohio*, 2013 WL 4502736 at *22 (S.D. Ohio Aug. 22, 2013), *aff'd in part, appeal dismissed in part sub nom. Baker v. Union Twp.*, 587 F. App'x 229 (6th Cir. 2014) ("Absent evidence of circumstances from which the Court could reasonably infer prior misapplications of the policy, the Court cannot conclude that the ratification of Officer Ventre's conduct was the 'moving force' behind the alleged constitutional violation."); *France v. Lucas*, 2012 WL 5207555 at *13 (N.D. Ohio Oct. 22, 2012), aff'd, 836 F.3d 612 (6th Cir.

2016) ("Without evidence of ratification of similar conduct prior to [the defendant officer's] alleged violation, Plaintiffs' *Monell* claim based on alleged ratification falls short.").

There has been no such showing in the present case. Plaintiff has not alleged any facts showing a history of Chester County deputies' misapplying County policy on issuing detainers. Accordingly, they have not shown that any "ratification" by Defendant Sheriff acted as a moving force for the alleged civil rights violation in this case.

Plaintiff has pled that the act or decision in question, i.e., the issuance of the detainer, was made by an official with the appropriate policymaking authority – the Sheriff with actual authority and the officers with imputed authority. *See Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (stating that a plaintiff must demonstrate that "the actor was a policymaker with final policymaking authority."); *Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191, 197 (6th Cir. 2010) (same). A plaintiff does not need to establish a pattern of past misconduct when the actor was a policymaker with final policymaking authority. *Burgess*, 735 F.3d at 479 (citing *Pembaur*, 475 U.S. at 481-84.) Instead, under a single-act theory of *Monell* liability, "a plaintiff must demonstrate that a 'deliberate choice to follow a course of action is made from among various alternatives by the official ... responsible for establishing final policy with respect to the subject matter in question.'" *Id.* (quoting *Pembaur*, 475 U.S. at 483). Moreover, the course of action chosen or ratified by the policymaker "must be shown to be the moving force behind or cause of the plaintiff's harm." *Id.* (citing *Pembaur*, 475 U.S. at 484-85).

Accepting Plaintiff's allegations as true that Defendant Sheriff had final policymaking authority and Defendant Officers had imputed policymaking authority,[4] Plaintiff cannot show that

---

[4] The Court is in no way making a determination that the officers actually had "imputed" authority and that their decision to issue a detainer in this particular case constituted a County policy as to the issuance of detainers in general.

their actions were the moving force behind any constitutional violation because, as discussed above, Plaintiff's constitutional rights were not violated when he was held beyond his first parole release date. Consequently, this theory of recovery fails.

Because Plaintiff has failed to plead a plausible § 1983 claim under any theory, Defendants' motion to dismiss Plaintiff's § 1983 claim is granted.

<u>State Law Claims</u>

In light of the dismissal of the federal claims, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims.  Retaining supplemental jurisdiction over state claims that arise out of the same facts that form a basis for a federal claim is a matter of discretion with the court. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, (1966); *Vandiver v. Hardin County Board of Education*, 925 F.2d 927, 935 (6th Cir. 1991). The factors to be analyzed in making that determination are judicial economy, comity, convenience, and fairness to the litigants. If all federal claims are dismissed before trial, as in the present case, the balance of factors will usually point toward dismissal of the state law claims. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, n.7 (1988). As explained in *Medlin v. City of Algood*, 355 F. Supp. 3d 707 (M.D. Tenn. 2019),

> With the dismissal of Medlin's federal claims against Bilbrey, the Court will not retain jurisdiction over the state law claims against that Defendant because, pursuant to 28 U.S.C. § 1367(c)(3), there is a "strong presumption in favor of declining to exercise jurisdiction over supplemental state-law claims after dismissing federal anchor claims[.]" *Martinez v. City of Cleveland*, 700 F. App'x 521, 523 (6th Cir. 2017). This holds true even where, as here, federal claims remain against other defendants. Retention of state law claims, however, may be appropriate where the case has been pending for a long time, discovery has been completed, the record is voluminous, a court has spent significant time on the litigation, and there are pending motions for summary judgment. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).

*Medlin*, 355 F. Supp. 3d at 719 (some citations omitted).

As in *Medlin*, this case is neither old nor voluminous.  It was filed less than a year ago on February 14, 2024, and there have only been approximately thirty docket entries thus far. No scheduling order has been entered. The only real involvement in this case by the Court so far has been to rule on the present motion. In light of these factors, the Court will not retain jurisdiction over the supplemental state law claims, and those claims are dismissed without prejudice.

Summary and Conclusion

Because Plaintiff has failed to state a claim against Defendants under § 1983 and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, Defendants' motion to dismiss is **GRANTED**. The motion is granted with prejudice as to the federal claims and without prejudice as to the state law claims.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  August 2, 2024.

19